THE CITY OF SPRINGFIELD DEPARTMENT OF PUBLIC AFFAIRS, Plaintiff-Appellant, *v.* CIVIL SERVICE COMMISSION, SPRINGFIELD, *et al.*, Defendants-Appellees.

Fourth District    No. 17273

Opinion filed January 14, 1982.

Robert M. Rogers, Assistant Corporation Counsel, of Springfield, for appellant.

Charles J. Gramlich, of Gramlich and Morse, of Springfield, for appellee Lawrence V. Grim.

Theodis Lewis, of Springfield, for appellee Illinois Civil Service Commission.

PRESIDING JUSTICE GREEN delivered the opinion of the court:
Defendant, Lawrence V. Grim, a police officer of the plaintiff, City of Springfield, was suspended without pay for 30 days by the mayor of that city, for failure to report for work as required. Defendant Grim then demanded a hearing before defendant Civil Service Commission, Springfield, Illinois, pursuant to the provisions of section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—1—18). After a hearing, the commission found Grim to have been guilty of a breach of discipline, but also found the suspension to be unduly severe and reduced

it to a period of 10 days without pay. On administrative review, the circuit court of Sangamon County affirmed.

On appeal, plaintiff maintains the commission had no power to reduce the length of the suspension and that if it did have the power, the reduction was an abuse of discretion.

The power of the commission arose from section 10—1—18 which states in pertinent part:

> "Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality * * * may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. * * * Nothing in this Division 1 limits the power of any officer to suspend a subordinate for a reasonable period, *not exceeding 30 days except* that any employee or officer suspended for *more than 5 days* or suspended within 6 months after a previous suspension shall be entitled, upon request, to a *hearing* before the civil service commission concerning the propriety of such suspension." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 24, par. 10—1—18.

■■ The plaintiff contends the phrase "the propriety of such suspension" has reference only to a determination as to whether an officer was guilty of such misconduct that some suspension could be imposed and not to the "propriety" of the length of a suspension. Defendants cite cases holding that when the initial determination as to the severity of a sanction imposed on an employee is made by a civil service commission, reviewing courts should set that determination aside only under very exceptional circumstances. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885; *Jones v. Civil Service Com.* (1979), 80 Ill. App. 3d 74, 399 N.E.2d 256.) No decisions of a court of review of this State concerning the power of a civil service commission to pass upon the severity of a sanction initiated by the governmental employer has been called to our attention. However, we agree with defendants that in passing upon the "propriety of [a] suspension," the commission should consider both whether the employee's conduct justifies some suspension and the length of the suspension. The two elements are so intertwined as to logically be part of the same inquiry. The commission did not err here in examining the "propriety" of the length of defendant Grim's suspension.

The following facts were established at the hearing before the commission. Defendant Grim had been a police officer for plaintiff for 10 years. In 1978 he had been suspended for five days for failing to report for duty. He had been off work for 10 or 11 days prior to August 27, 1979, apparently on vacation. From 7 to 10 p.m. on that date he participated in

required marksmanship qualification procedures at a firing range and then left without reporting for work at 10:30 as he was scheduled to do. He consumed some intoxicants and later reported for work at 2:30 a.m. However, he was sent home by a superior officer who testified to having noticed a faint odor of an intoxicant on Grim's breath.

Evidence was also presented that when Grim reported at 2:30 a.m., he told a superior officer that his automobile had broken down but later said he had gotten confused and thought he had the day off.

In the recent case of *Department of Mental Health & Developmental Disabilities*, the Illinois Civil Service Commission ordered an employee suspended, and, on review, the circuit court remanded with directions to discharge the employee. Holding that the question of whether cause for discharge exists should be determined by the administrative agency and that the agency's decision will not be reversed unless it is arbitrary, unreasonable or unrelated to the requirement of service, the supreme court reversed this court's affirmance of the circuit court. The instant case differs in that here the maximum sanction is that of suspension rather than dismissal; a city civil service commission rather than that of the State is involved; and the sanction was initially imposed by the employer rather than a civil service commission. Section 10—1—18 makes no mention as to whether any deference should be given to the initial determination of the employer. Even if some deference should be given, the commission here could properly have decided that Grim's tardiness and possible unfitness for duty when he reported at 2:30 a.m. resulted from an honest mistake on his part as to whether he was to return to work on that day. If so, the reduction in the length of the suspension was not arbitrary, unreasonable or unrelated to the requirements of service by police officers. We deem that standard to be applicable although no question of discharge was involved and the civil service commission making the decision was that of a city rather than the State.

Cited by the commission and called to our attention is the case of *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, where the supreme court construed section 10—1—18.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1), which provided that in cities of a population of more than 500,000, a police officer could not be suspended for more than 30 days unless written charges were filed with the police board and the officer was given an opportunity to be heard. Section 10—1—18.1 further stated:

> "Nothing in this Section limits the power of the superintendent to suspend a subordinate for a reasonable period, not exceeding 30 days." (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.1.)

The section contained no provision similar to that in section 10—1—18,

requiring a hearing if the suspension exceeded five days but the supreme court held in *Kropel* that the fourteenth amendment to the United States Constitution and section 2 of article I of the Illinois Constitution of 1970 required the court to construe the statute to afford the officers a right to some sort of a hearing when suspensions were for more than a few days.

The *Kropel* court concluded that section 10—1—18.1 should be considered *in pari materia* with section 10—1—18, section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—17), section 13 of "An Act in relation to the State Police" (Ill. Rev. Stat. 1973, ch. 121, par. 307.13), and sections 8b.15 and 8b.16 of the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, pars. 63b108b.15, 63b108b.16), all of which provided for hearings for public employees suspended for certain periods which were less than 30 days. The court there stated:

> "It is clear from all of the statutes and rules set forth above that a major difference between a suspension for less than 30 days and a suspension for more than 30 days is that the latter requires a hearing before the sentence can be imposed. In effect, the department has the duty to go into a hearing and prove its case for suspension of more than 30 days. In the former instance, the burden is on the employee to seek review and establish why the suspension is unwarranted. Therefore, we hold that the plaintiff is entitled to an opportunity to review his suspension, and that, in order to uphold the suspension, it must be approved by a majority of the police board. *If the board does not approve the suspension, it shall enter appropriate orders to place the plaintiff in the same position as had the suspension not been levied in the first instance.*" (Emphasis added.) 60 Ill. 2d 17, 26-27, 322 N.E.2d 793, 798.

Suggestion has been made that by the italicized words, the *Kropel* court indicated that the legislation to which analogy was drawn did not authorize the reviewing board or commission to shorten the length of the suspension but only to determine whether suspension was proper. We recognize that as a possible interpretation but deem it more likely such was not intended. The court also noted that the major difference between the suspension of less than 30 days and the longer suspension was that in the former, the employee had the burden of seeking review and establishing the error in the suspension, while in the latter, the employer had to initiate the proceedings and prove its case. In the latter situation the commission clearly has authority to reduce the severity of the suspension. Had the supreme court intended to be promulgating a rule whereby the severity of the suspension could not be reduced in the former case it would have been likely to so state. Furthermore, the court recognized:

> "[T]hat such suspensions do have a substantial economic impact

on the employee, so a review procedure is available if the suspension is for more than 5 days." (60 Ill. 2d 17, 21, 322 N.E.2d 793, 795.)

The court's concern with the economic impact of suspensions, even if for less than 30 days, is inconsistent with an intention that the commission have no power to reduce the severity of such a suspension.

■■ We thus determine that the Civil Service Commission properly considered the length of the suspension, and its determination to greatly reduce its length was not a decision which should be judicially overturned. We affirm the judgment of the circuit court.

Affirmed.

TRAPP, J., concurs.


JUSTICE WEBBER, dissenting:

I cannot concur in the result reached by my colleagues and suggest that they misread *Kropel*.

Section 10—1—18 of the Municipal Code, cited in the majority opinion, sets up a clear three-step system of punishments for an errant officer:

1. Suspension for less than 5 days.
2. Suspension for more than 5 days but less than 30 days.
3. Removal, discharge, or suspension for more than 30 days.

Step 1 is only a woodshedding and does not entitle the officer to a hearing. Step 2 is self-executing, but the officer is entitled to a hearing after the fact as to the "propriety" of the suspension. Step 3 requires a hearing before imposition of the punishment.

Step 2, in my opinion, is simply a guilty-or-not-guilty judgment by the commission, and I believe that this is borne out by the italicized language of *Kropel* quoted in the majority opinion. "If the board does not approve the suspension," it must place the officer *in statu quo ante*. The supreme court said nothing about reducing, mitigating, or tinkering with the number of days of suspension. Hence, the commission has an all-or-nothing choice: It can approve and the suspension stands, or it can disapprove and "enter appropriate orders to place the officer in the same position as had the suspension not been levied in the first instance."

If *Kropel* is to be understood to encompass as broad a range as suggested by the majority, what is to happen if the commission approves

the suspension but believes that it should be more than 30 days? Does it have the power under *Kropel* to increase the suspension to 45 days? Or 60 days? Or to discharge altogether? To ask the question is to answer it. No. Plenary powers are conferred on the commission only under step 3.

I find an analogy, albeit an imperfect one, in the criminal area. Section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1) conferred upon a reviewing court the power to modify a sentence, including the power to increase or decrease it. In *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the supreme court held that the power of reduction infringed upon its Rule 615(b)(4) (73 Ill. 2d R. 615(b)(4)) and hence was null and void, but the underlying principle remains the same: There must be found in either a legislative enactment or in a rule the specific power to reduce punishment. No such specificity appears in the instant case either in section 10—1—18 of the Municipal Code or in *Kropel*. The majority opinion relies upon inference and surmise to reach its conclusion.

"Propriety" is etymologically related to both "proper" and "property." The fundamental meaning of the latter is "a peculiar and characteristic quality of a thing or, formerly, a person; as, the *properties* of a triangle." Webster's Second New International Dictionary 1984 (1959).

"Propriety" stresses conformity to a standard of what is correct. Thus, the standard of review in step 2 is whether any suspension at all is justified, not how much.

The commission acted beyond its statutory power in reducing the suspension, and the circuit court was in error in affirming its action. It is obvious that the commission approved a suspension and therefore nothing would be accomplished by a remandment. I would, therefore, pursuant to the authority of Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)) reverse the circuit court and vacate that portion of the commission's order which reduces the period of suspension.