NEIL CALANCA, Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF NORTHBROOK *et al.*, Appellees.

First District (4th Division)   No. 85—0811

Opinion filed January 23, 1986.

Stephen J. Culliton, of Civinelli, Bakalis & Culliton, of Bloomingdale, for appellant.

Clifford L. Weaver and Steven M. Elrod, both of Burke, Bosselman & Weaver, of Chicago, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Neil Calanca, was given a five-day suspension from his position as a police officer for the village of Northbrook by the code-fendant Arthur K. Schmidt, the village police chief. Defendant, the

board of fire and police commissioners of the village of Northbrook (board), upheld the suspension, and the circuit court confirmed the decision of the board. Plaintiff has brought this appeal, contending that the board erred in placing the burden of proof upon him to show that the police chief abused his discretion in ordering the suspension, that the board's findings are legally insufficient, and that the board's decision to uphold the suspension is against the manifest weight of the evidence.

On March 7, 1984, plaintiff was suspended by the police chief for two days for failure to properly care for departmental equipment and an additional three days for untruthfulness. The suspension arose from the fact that a squad car driven by plaintiff on January 24, 1984, was returned to the garage in a damaged condition. Plaintiff did not report the damage, which consisted of a gaping hole in the front grill section of the car body directly above the headlight on the passenger's side. Plaintiff maintained throughout the proceedings that he had no knowledge of the damage or its cause when he returned the car. Plaintiff appealed the order of suspension to the board in accordance with the provisions of section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17).

At a hearing before the board, plaintiff testified that he inspected the car before beginning his shift at 2:30 p.m. on January 24, 1984, and found it to be in good condition. He was not involved in any accidents that evening and had no knowledge of how the front of the car was damaged. Plaintiff testified that he parked the car near the Dunbrook Pharmacy at approximately 10 p.m. and observed no damage when he returned to the car a short time later. When he returned to the police station at 10:30 p.m., he pulled up near the gas pumps and had a brief conversation with Sergeant Warren Lischett. Plaintiff stated that the area was well lighted and Lischett was approximately 20 feet away. Plaintiff then drove his car into the underground garage and backed into the parking stall farthest from the entrance, which positioned the passenger's side next to the wall. He explained that he parked in that manner because of a department order stating that the stalls at the end should be filled first, and also because another car was following close behind him. Plaintiff stated that he took a cursory glance at the car from a distance of 10 feet as he walked away from it and failed to observe any damage to the front. He stated that the driver following him parked somewhere in the middle of the garage. Plaintiff began a scheduled three-week vacation the following day and did not turn in his routine activity report for the night in question until after his vacation. He explained that he normally turned in his re-

port on the day of his next shift.

Plaintiff further testified that the underground garage was not secured and that many persons had access to it. Furthermore, the custom of the police department accident review board was to recommend a reprimand or one-day suspension when an officer responsible for an accident had not been involved in an accident for a period of two years. According to plaintiff, he had no accidents in the three-year period preceding his suspension. Plaintiff stated that he would have reported the damage had he been aware of it.

The board then presented the testimony of police chief Arthur K. Schmidt, who stated that he drove by plaintiff's squad car at 4 p.m. that evening and observed no damage to the front end. Officer Donald Henderson testified that he observed plaintiff's car sometime between 8 p.m. and 9 p.m. and did not notice any damage. Officer Walter Ostrenga testified that he entered the garage at 11 p.m. and parked directly across from plaintiff's car. He noticed the damage at that time but did not report it.

Sergeant Warren Lischett testified that although he had a conversation with plaintiff when plaintiff pulled his car next to the gas pumps, he was on the driver's side and could not see the front of the car. Lischett testified that he walked through the garage at approximately 11:10 p.m. but did not look at plaintiff's car.

Deputy chief J. Mills testified that the damage was reported to him at 3 p.m. on January 25, 1984. When he inspected the area, he found no debris near the car. Mills stated that the floor was cleaned only for special functions and had not been cleaned that day.

At the conclusion of the hearing, the board upheld the five-day suspension order on the ground that plaintiff failed to prove that the police chief abused his discretion in entering it. The circuit court confirmed the board's action.

■■ Plaintiff first contends that the board erred in placing the burden of proof upon him, thus requiring him to prove that the suspension constituted an abuse of discretion by the police chief. He argues that section 10—2.1—17 of the Illinois Municipal Code should be construed as placing the burden of proof upon the board. That section provides for a hearing before the board prior to an officer's discharge or suspension for cause and limits any resulting suspension to 30 days or less. However, the section there specifically authorizes a police chief to impose suspensions of up to five days, subject to the right of the suspended officer to appeal to the board. The portion governing this right to appeal states as follows:

"Any policeman or fireman so suspended may appeal to the

board of fire and police commissioners for a review of the suspension within 24 hours after such suspension, and upon such appeal, the board may sustain the action of the chief of the department, may reverse it with instructions that the man receive his pay for the period involved, or may suspend the officer for an additional period of not more than thirty days or discharge him, depending upon the facts presented." Ill. Rev. Stat. 1983, ch. 24, par. 10—2.1—17.

In *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, the Illinois Supreme Court upheld the constitutionality of section 10—1—18.1 of the Illinois Municipal Code, which is similar to the above-quoted statute except for the fact that it applies to larger municipalities. Section 10—1—18.1 provides for a hearing prior to the discharge or suspension of an officer for more than 30 days. However, the last paragraph provides that "[n]othing in this Section limits the power of the superintendent to suspend a subordinate for a reasonable period, not exceeding 30 days."

After holding that due process mandates some manner of review of a suspension of 30 days or less, the *Kropel* court discussed the procedures to be employed in such a review. It stated that:

"[A] major difference between a suspension for less than 30 days and a suspension for more than 30 days is that the latter requires a hearing before the sentence can be imposed. In effect, the [police] department has the duty to go into a hearing and prove its case for suspension of more than 30 days. *In the former instance, the burden is on the [police officer] to seek review and establish why the suspension is unwarranted.*" (Emphasis added.) *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 26-27, 322 N.E.2d 793.

Applying this reasoning to the case at bar, we believe the board properly placed the burden of proof upon plaintiff. This comports with the settled legal principle that the party prosecuting an appeal bears the burden of proving that the earlier decision was erroneous. (*Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 409 N.E.2d 477.) Plaintiff argues that due process requires that the burden of proof in an appeal from a five-day suspension be the same as in a hearing prior to a 30-day suspension because, pursuant to section 10—2.1—17, the board could have raised the penalty from a five-day suspension to discharge. Plaintiff's constitutional challenge is based upon speculation and is not properly before us, since the board in the case at bar merely affirmed the five-day suspension.

■ Plaintiff next contends that the findings of the board are le-

gally insufficient because they fail to contain specific findings of fact. The findings of the board are as follows:

"Appellant failed to prove, by a preponderance of the evidence, that the chief of police of the village of Northbrook abused his authority and discretion in issuing said order of suspension.

The evidence and testimony presented by the appellee, chief of police, support the fact that the chief of police acted within his authority and discretion in issuing said order of suspension."

We have previously held that where the testimony before the administrative agency is preserved for review in the record, specific findings of fact by the agency are not necessary for judicial review. (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 657, 456 N.E.2d 998.) Plaintiff's contention in this regard is therefore without merit.

■ Plaintiff's final contention is that the board's decision to uphold the suspension order is against the manifest weight of the evidence.

As previously discussed, plaintiff had the burden of proving that the police chief's action in suspending him for two days for failure to properly care for departmental equipment and three days for untruthfulness constituted an abuse of discretion. Clearly, such abuse of discretion would be shown if there existed no evidence to support the charges underlying the suspension. In furtherance of meeting his burden, plaintiff testified that the squad car was in good condition when he took possession of it at 2:30 p.m., that he had no accidents that day, left the car at least one time at 10 p.m. in the parking lot of the Dunbrook Pharmacy and did not notice that it was damaged when he returned it. We believe that at that point, it became incumbent upon defendant to show that the damage was in some way occasioned by plaintiff's failure to properly care for the car. Instead, the evidence before the board showed only that the car was returned in a damaged condition. It is possible that the damage was caused by a vandal or by another car while plaintiff was away from his vehicle. Since plaintiff would of necessity be called away from the car from time to time, the fact that damage occurred is not, in itself, sufficient to sustain a finding that he failed to properly care for departmental equipment.

However, we do believe that the evidence was sufficient to support the police chief's imposition of a three-day suspension for untruthfulness. The manner in which the vehicle was parked in the garage with the damaged portion next to the wall, along with the very

obvious nature of the damage and the fact that plaintiff glanced at the car when leaving it, supports the board's finding that plaintiff was untruthful when he denied knowledge of the condition when he returned the car. Furthermore, although the evidence showed that the garage was not secured, there was no debris near the car, and it was parked in a manner which would make it very unlikely that it was damaged by another car.

Accordingly, the judgment of the circuit court is affirmed as to the three-day suspension order and reversed as to the two-day suspension order.

Affirmed in part; reversed in part.

LINN, P.J., and JIGANTI, J., concur.