**Francis GOLBECK, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation, and Leroy Martin, Defendants.**

**No. 91 C 2975.**

United States District Court, N.D. Illinois, E.D.

Jan. 8, 1992.

---

Glenn J. Jazwiec, Carr & O'Rourke Associates, Chicago, Ill., for plaintiff.

Kelly Raymond Walsh, Nancy L. Van Allen, Tracey Renee Ladner, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Francis Golbeck, a Chicago police captain, challenges the constitutionality

of his three-day suspension under the due process and equal protection clauses of the Fourteenth Amendment, and Article 1, Section 2 of the Illinois constitution. Defendants now move to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion is granted in part and denied in part.

## FACTS

In considering defendants' motion to dismiss, we accept plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), and view them, along with any reasonable inferences to be drawn from them, in a light most favorable to the plaintiff. *Doe, on behalf of Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 414 (7th Cir.1986). Using this standard, the following facts reflect plaintiff's version of the events in question.

On April 11, 1990, the Chicago Police Department notified plaintiff in writing of allegations of misconduct against him.[1] Sgt. Rojek investigated the allegations and recommended a 15–day suspension without pay. In mid-June, plaintiff requested and received a complaint review panel hearing.[2] Apparently, the complaint review panel agreed with Sgt. Rojek's recommendation of a 15–day suspension. Following the hearing, however, Supt. Martin authorized

a reduced suspension of three days without pay.[3] Plaintiff's suspension was not submitted to the Police Board for review, nor did plaintiff receive a hearing before the Board. On December 27, 1990, a personnel order was issued announcing plaintiff's suspension for violation of Police Department Rules 1, 2, 4, 6 and 14.

## DISCUSSION

Plaintiff alleges that his suspension and the process he received were improper for numerous reasons.[4] Consequently, plaintiff claims he was denied equal protection and was deprived of both property and liberty interests without due process of law.

Defendants contend that the City and Supt. Martin, in his official capacity, must be dismissed because plaintiff has not alleged that defendants' actions were taken pursuant to an unlawful municipal policy, as required in order to state a § 1983 claim. Also, if Supt. Martin is being sued in his individual capacity, defendants assert that he is entitled to qualified immunity. Moreover, defendants deny that plaintiff was deprived of liberty or property interests, and they assert that he received all process due in any event. Finally, defendants contend that plaintiff has failed to state an equal protection claim.

1. The notification summarized allegations of three complainants, Daniel Misicka, Gordon Tyrolt, and Sgt. Leo Rojek. Basically, plaintiff was accused of using his office as a police captain to extort services, retaliating against Mr. Misicka by having his firm cited for a business license violation, failing to pay for work done on plaintiff's car, and ordering an arrest report on Mr. Misicka in violation of departmental directives.

2. The hearing findings were as follows:

It has been determined that Captain Francis Golbeck, Star 57, Unit 016, violated Rules 1, 2, 4 (3 counts), 6 (2 counts) and 14 of the Department, in that on 27 February 1990 and 2 March 1990, the said member initiated vindicative [sic] actions against the complainant and used his office as a police officer to influence the outcome of a civil investigation and directed a subordinate to complete an arrest report and obtain a C.B. number while

the alleged arrestee was not in custody in violation of I.R.S. and General Orders.

3. The suspension order signed by Supt. Martin indicates that the suspension was to take place from December 28, 1990 to December 30, 1990. Plaintiff indicates the suspension was in May, however.

4. Most notably, plaintiff's suspension was not reviewed by the Police Board, as, he claims, is required under Illinois law. Also, the notification of charges allegedly did not inform plaintiff adequately of which rules he was accused of violating. Further, the complaint review panel hearing he did receive allegedly was based on an unfair investigation in violation of several police department rules regarding complaint and disciplinary procedures and department member bill of rights. Also, a conflict allegedly existed because a former supervisor of plaintiff was a member of the hearing board, also in violation of police regulations.

384

## I. Unlawful Municipal Policy and Qualified Immunity

 Plaintiff asserts his constitutional claim under 42 U.S.C. § 1983. In order to sue a municipality (or a public official acting in an official capacity) under § 1983, plaintiff must allege that his injury was the result of an official policy, custom or practice. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Plaintiff claims he was denied due process because he was denied Police Board review of his suspension, which he claims he is entitled to under Illinois law, Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1, as interpreted by the Supreme Court of Illinois in *Kropel v. Conlisk*, 60 Ill.2d 17, 322 N.E.2d 793 (1975). Defendants, however, claim the contrary, that the procedures followed do not violate either Illinois law or the federal Constitution.[5] Because defendants assert that plaintiff's suspension was not improper under police rules and regulations, Illinois law or the federal Constitution, then any resulting constitutional injury (should there be one) is the direct result of an official policy, custom or practice. *See D'Acquisto v. Washington*, 640 F.Supp. 594, 605–606 n. 3 (N.D.Ill.1986) ("Further, the superintendent and the Police Board function as municipal officers with authority to establish official policy, so their acts are municipal policy for which the City may be held liable.").[6] Therefore, neither the City nor Supt. Martin, in his official capacity, will be dismissed on this basis.

Defendants argue that the complaint against defendant Martin, in his individual capacity,[7] should be dismissed because Martin is entitled to qualified immunity. This is so, they claim, because plaintiff had no clearly-established right to Police Board review prior to his suspension. Should this be the case, however, Supt. Martin would only be entitled to qualified immunity on damages. *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Because such immunity is only relevant to a damage claim against Martin, and not to the injunctive relief sought by plaintiff, Martin will not be dismissed on the basis of qualified immunity.

## II. Deprivation of Property Without Due Process

Plaintiff claims his suspension denied him of a property interest in continued employment. Defendants admit that there "is no dispute that, as a career service CPD police officer, plaintiff has a property interest in continued employment" (defs. mem. p. 2). However, defendants do maintain that plaintiff has not been deprived of a property interest. According to defendants, we must reach this conclusion because plaintiff has not based his claim on an interest in continued employment, *i.e.*, plaintiff has not alleged that defendants deprived him of his job, but merely that they suspended him for three days.

 To determine whether an employee has a property interest in continued employment under the Fourteenth Amendment, one must look to sources outside of the Constitution, such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972).

---

**5.** The City of Chicago Department of Police rules and regulations provide that in "all cases in which the Superintendent of Police has ordered a member to be suspended for a period of time, no less than 6 days nor more than 30 days, the member of the Department to be suspended will be served with a notice stating the length of suspension and the reason therefor. The notice will also state that the Department member has a right to have the suspension reviewed by the Police Board."

**6.** In any event, the act of suspending plaintiff and providing no police board review was not "random and unauthorized" as in *Jones v. Doria*, 767 F.Supp. 1432 (N.D.Ill.1991).

**7.** It is not clear whether Supt. Martin is being sued in his official or individual capacity. Plaintiff does not use these terms in his pleadings. The case caption refers only to "Leroy Martin" and not to his job title. The complaint, however, refers almost exclusively to Martin's actions as those of "Superintendent Leroy Martin" or "Leroy Martin, Superintendent of Police," (cplt., ¶¶ 14–17), suggesting that Supt. Martin is being sued only in his official capacity. *See Ceko v. Martin*, 753 F.Supp. 1418, 1421 n. 1 (N.D.Ill.1990).

Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1, gives non-probationary Chicago police officers a protected property interest in their continued employment. *See, e.g., D'Acquisto,* 640 F.Supp. at 607. Defendants' argument that a three-day suspension is not deprivation of property because plaintiff has not been deprived of his job, is without merit. Once plaintiff has been found to have a protected property interest, and given a deprivation that was not *de minimis,*[8] due process must be taken into account. *Goss v. Lopez,* 419. U.S. 565, 576, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975).

Due process is a flexible concept and the procedural protections required depend upon the particular situation. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "The court must balance the competing interests of the plaintiff and the government, and the relative strength of those interests." *Ceko v. Martin,* 753 F.Supp. 1418, 1423 (N.D.Ill.1990). Due process requires notice and "some kind of a hearing"—an opportunity to be heard, at a minimum. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). An opportunity to be heard "is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Man-*

zo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

Both plaintiff and defendants have devoted significant portions of their briefs to the issue of whether Illinois law requires a Police Board review of a three-day suspension.[9] Plaintiff also alleges he was denied due process because the investigation and the hearing he did receive were improper in many respects, primarily because the police department violated its own procedures (cplt., ¶¶ 19–20). However, violations of state law or the department's own procedures are not the issue here, federal constitutional standards are. *See Jones v. Doria,* 767 F.Supp. 1432, 1438 (N.D.Ill.1991) (failure to follow state law or procedures is not "actionable under federal law as such"). Thus, this court does not now decide whether plaintiff was entitled to Police Board review as a constitutional matter. Plaintiff was entitled to some kind of a hearing, providing a meaningful opportunity to be heard.

Plaintiff has admitted in his complaint that he was advised of the investigator's recommendations, that he requested a complaint review panel hearing, and that such a hearing was conducted. In light of the modest discipline imposed and, therefore, the modest property interest depriva-

---

**8.** Defendants do not address whether a three-day suspension without pay is *de minimis,* but we find it is not in these circumstances. *See Click v. Board of Police Commissioners,* 609 F.Supp. 1199, 1204 (W.D.Mo.1985) (three-day suspension without pay not *de minimis*); *but see Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270, 272 n. 1 (6th Cir. 1985) (two-day suspension without pay "in the manner of routine discipline" is *de minimis*).

**9.** Much of the debate surrounds the interpretation of the Supreme Court of Illinois case, *Kropel v. Conlisk,* 60 Ill.2d 17, 322 N.E.2d 793 (1975). In *Kropel,* the court decided that a Chicago police officer who was summarily suspended for 30 days was entitled to an opportunity for review of his suspension and majority approval by the Police Board. Though the issue was not decided as a constitutional matter, the court did state:

> If, then, it is clear that there are outer limits to the superintendent's power of suspension, and that the public policy of this State has generally provided for some form of review

of suspensions, if section 10–1–18.1 of the Municipal Code is to survive constitutional attack on due process and equal protection grounds, we must construe it to provide for some manner of review of suspensions for less than 30 days.

*Kropel,* 60 Ill.2d at 26, 322 N.E.2d at 798. Plaintiff interprets *Kropel* to stand for the proposition that the constitution requires police board review of any suspension. Defendants interpret it to allow for suspensions shorter than six working days with no review at all. For purposes of this motion, we need not decide whether plaintiff is correct, because we have already concluded that "some kind of hearing" is required by due process.

Plaintiff has also moved to strike defendants' reply memorandum because, according to plaintiff, defendants mischaracterized an Illinois state court exchange regarding *Kropel* between the parties and Judge O'Brien. This court declines to rule on the motion to strike because our ruling on the motion to dismiss is not affected by these portions of defendants' reply brief.

tion, that hearing may well be all that due process requires. He insists, however, that due process was not satisfied by that hearing, without telling us the nature of that hearing and its inadequacies. Both plaintiff and defendants have appended copies of selected Chicago Police Department orders and regulations to their memoranda, as if this were a motion for summary judgment and this court could consider unverified exhibits. But even if we did consider them, they contain but a passing reference to complaint review panels, and their role is undefined. We are left, then, with an allegation that the hearing plaintiff did receive did not comport with due process and, under notice pleading, that barely, and for now, is enough to survive a motion to dismiss. We therefore deny defendants' motion to dismiss plaintiff's claim of deprivation of a property interest without due process.

### III. *Deprivation of Liberty*

 Plaintiff also claims that he was deprived of a liberty interest in future employment because the order suspending him listed the allegations that were the basis of his suspension. He claims that its publication will stigmatize him, damage his reputation as a police officer, and adversely affect his future employment and advancement opportunities.[10] To state a claim for deprivation of liberty, plaintiff must plead several elements:

**10.** An individual's interest in his reputation is not, by itself, a protectible liberty interest under the due process clause. *D'Acquisto,* 640 F.Supp. at 607.

**11.** Plaintiff does allege his suspension was without cause and improper; however, this allegation is not a sufficient allegation of falsity. Throughout his argument, plaintiff repeatedly attacks the propriety of his suspension on various procedural grounds, yet nowhere does he question the accuracy of the allegations of the complainants themselves.

**12.** Also, the sufficiency of plaintiff's allegation of publication of the stigmatizing material is questionable. To state a claim, plaintiff must allege that the stigmatizing order announcing his suspension was somehow made public. *Shlay v. Montgomery,* 802 F.2d 918, 924 (7th Cir.1986). Plaintiff alleges that personnel of the Chicago Police Department had access to the

First, obviously, if the injury rests on defamation, the state action must be defamatory. At a minimum, then, the charges must be false, *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977), and must have been communicated to someone, *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Secondly, if the alleged injury is to the individual's liberty interest in pursuit of his occupation, then the defamation must come in the context of an unfavorable employment decision, *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); must carry the kind of stigma which could substantially curtail the individual's employment possibilities, *Munson v. Friske,* 754 F.2d 683 (7th Cir. 1985); and must have been communicated, or have the potential for being communicated, to possible employers. *Perry [v. F.B.I.],* 759 F.2d [1271] at 1279[ 7th Cir. (1985) ]; *Larry [v. Lawler ],* 605 F.2d [954] at 958[ 7th Cir. (1978) ]

*D'Acquisto,* 640 F.Supp. at 610. Plaintiff does not allege the charges presumably forming the basis for his suspension to be false, as required by *Codd.*[11] Thus, plaintiff fails to state a claim for deprivation of a liberty interest.[12]

### IV. *Equal Protection*

Plaintiff claims he was denied equal protection as a member of the class of sus-

allegedly stigmatizing information; however, "[a]bsent proof that the Police Department or any of the defendants disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [he] cannot show that the defendants' actions impinged on [his] liberty interest in pursuing [his] occupation." *Ratliff v. Milwaukee,* 795 F.2d 612, 627 (7th Cir.1986).

Plaintiff's claim of deprivation of liberty is also on shaky ground in light of the fact that he remained employed following his suspension and was only suspended for a short time. *See Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984) (public employee liberty interest "cases have no application where the employee is not fired. Hershinow cannot complain that he has been made unemployable; he remains employed, and in a job that has considerable tenure rights attached to it."); *but see D'Acquisto,* 640 F.Supp. at 610–11.

pended officers who are denied Police Board review because the suspensions are for under six days. He finds arbitrary and unjustifiable any distinction between a suspension for under six days and one for six or more days. Plaintiff also claims a fundamental right to continued employment as a police officer.

 "Where neither an invidious classification nor a deprivation of a fundamental interest is alleged, the equal protection clause requires only that the classification bear some rational relationship to legitimate governmental ends." *Brown v. Lake Geneva*, 919 F.2d 1299, 1302 (7th Cir.1990). Plaintiff's attempt at defining his class falls far short of an invidious classification; he does not allege that persons of his race, sex or religion are suspended without Police Board review more often than others. *See D'Acquisto*, 640 F.Supp. at 625. Moreover, pursuit of a career as a police officer is not a "fundamental right" for strict scrutiny analysis. *Thomas v. Board of Examiners*, 651 F.Supp. 664, 671 (N.D.Ill.1986), *aff'd*, 866 F.2d 225 (7th Cir.1988), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 405 (1989).

Plaintiff's claim that the "arbitrary" police practice violates the equal protection clause is also unavailing. "[I]t is generally assumed that a completely, ludicrously arbitrary law would violate the equal protection clause even if it did not deny someone's 'fundamental' rights or (otherwise) discriminate against a vulnerable group." *Pontarelli Limousine, Inc. v. Chicago*, 929 F.2d 339, 342 (7th Cir.1991). Contrary to plaintiff's assertions, however, providing less procedure for someone suspended for a shorter time than for someone with a longer suspension is hardly ludicrously arbitrary. In fact, the concept is a basic one in due process analysis. *See Goss*, 419 U.S. at 576, 95 S.Ct. at 736 (the length and severity of deprivation is a factor to be weighed in determining the appropriate form of a hearing). Plaintiff has failed to state an equal protection claim.

## CONCLUSION

We grant defendants' motion to dismiss plaintiff's equal protection claim and his claim of deprivation of liberty without due process. We deny defendants' motion to dismiss plaintiff's claim of deprivation of property without due process.